## SCHULTZ v. LONG ISLAND MACHINERY & EQUIPMENT CO., Inc.

### No. 5432.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1937.

570

Isaac Abramson, of Shreveport, for appellant.

L. L. Lockard and Harry V. Booth, both of Shreveport, for appellee.

## TALIAFERRO, Judge.

Plaintiff seeks to recover judgment in personam against defendant, a foreign corporation, domiciled in the state of New York, for an alleged balance due on sales of scrap iron and steel, consummated in the state of Louisiana. It is alleged that defendant, through its agents and officers, has been doing business in the state for the past several years, such business being the buying of scrap iron and scrap steel therein, and particularly in the cities of New Orleans, Lake Charles, and Shreveport, wherein this suit was filed; that after making purchases of said material in and about the city of Shreveport, shipment thereof was made to New Orleans or Lake Charles, at which ports said material is sold to foreign purchasers for overseas shipment, "and accordingly has been loading same out of Lake Charles and New Orleans, Louisiana, destined for foreign ports." From these allegations of fact, plaintiff draws the legal conclusion and avers that defendant has subjected itself to the jurisdiction of the courts of this state.

Pursuant to plaintiff's prayer, service of citation and petition was made on the secretary of state, as is authorized by section 26 of Act No. 267 of 1914.

Defendant's exception to the court's jurisdiction is as follows:

"Now into court through undersigned counsel comes the Long Island Machinery & Equipment Company, appearing herein for the purposes of this exception only and not subjecting itself to the jurisdiction of this court for any other purpose, excepts to the jurisdiction of this court to hear and to determine this cause for the following reason, to-wit:

"That defendant is a corporation, incorporated and domiciled in the State of New York; that it has not been licensed to do business in the State of Louisiana and has not appointed an agent or agents for the service of process in the State of Louisiana; that it has no agents for any purpose who are residents of the State of Louisiana, and maintains no office nor place of business of any kind in the state; that it is engaged exclusively in the interstate and foreign commerce; and that the contract sued on herein was the purchase of materials for shipment to the Kingdom of Japan and required, as plaintiff well knew, a continuous movement from Shreveport, Louisiana, to Lake Charles and thence by ship to Japan with only interruption in movement at Lake Charles, as was required for inspection and loading on a ship; that defendant does no continuous business in Louisiana,. but comes into the state by non-resident agents casually and intermittently and for a short time only for the limited purpose of purchasing scrap iron for interstate and foreign shipment, and that it has never done a local business in the State of Louisiana and that at this time it is not engaged in business of any sort in the State of Louisiana that the defendant herein is not a corporation required by law to maintain an agent for the service of process in the State of Louisiana; and that even if the court finds it is required by the State of Louisiana to appoint an agent for service, then in that event defendant alternatively shows that plaintiff has not complied with section 26 of Act. No. 267 of the Legislature of 1914, accordingly service of process on the defendant herein through the Secretary of Louisiana is null and void and does not subject defendant to the jurisdiction of this court.

"Wherefore, exceptor prays that this exception to the jurisdiction of this court to hear and determine this cause be maintained, and that plaintiff's demand be dismissed with costs."

The exception was tried and submitted upon an agreed statement of facts, which we have incorporated in full:

"The defendant is a corporation, incorporated and domiciled in the State of New York; it has not been licensed to do business in the State of Louisiana and has not appointed an agent or agents for the service of process in the State of Louisiana; it has no agents for any purpose who are residents of the State of Louisiana and maintains no office nor place of business of any kind in the State.

"It is engaged in the business of buying and selling scrap iron and steel.

"It maintains no office in the State of Louisiana, but its officers and agents come to the State of Louisiana and purchase scrap iron and steel, from various persons located and doing business in the State of Louisiana.

"It has this scrap iron and steel shipped either to Lake Charles, Louisiana, or New Orleans, Louisiana, where it is inspected and unloaded. After being inspected by the representatives of the defendant Corporation, the scrap iron and steel which meets the requirements is loaded and shipped either to other parts of the World, usually to the Kingdom of Japan, or to other States of the Union.

"The Corporation has been engaged in this method of procedure for several years with reference to its Louisiana business; that all of the scrap iron and steel in Louisiana, as above set forth, is shipped out of the State of Louisiana.

"The said agents of defendant come into Louisiana only casually and intermittently and for a limited purpose of purchasing and shipping scrap iron or steel out of the State; and do likewise in other States of the Union except the State of New York."

The court sustained the exception and dismissed the suit, giving written reasons for its action. On motion for a rehearing, plaintiff alleges:

"3. Mover shows that the court has erred in its construction of the words 'casual' and 'intermittently', placed in the Stipulation of Facts and has taken it to mean that the actions of the defendant are in no sense continuous.

"4. That as a matter fact the business engaged in by the defendant consists of regularly purchasing scrap iron and steel and selling it, as set forth in the agreed Statement of Facts.

"5. That it is not continuous in the sense that it maintains an office here and continually does business. That on the other hand, the defendant comes into the State of Louisiana, every year in order to make these purchases. That it does not make these purchases daily, but canvasses the trade intermittently every year.

"6. That the business of the defendant is therefore such as to subject it to the jurisdiction of the court.

"7. That the statement in the stipulation that the business done by the defendant was casual and intermittent is a statement of law and not of fact and cannot be accepted without a stipulation of actual facts constituting such a business is casual and intermittent."

This motion was overruled. The court supports its denial of the motion by written reasons.

The question here presented is whether defendant is engaged in or doing business within the state of Louisiana in such manner and to such extent as to render it amenable personam to the jurisdiction of its courts, it being admitted that exceptor has not established an office or appointed an agent therein for service of process. The lower court lucidly discussed the question and gave sound reasons for resolving it favorably to the exception. We adopt these reasons as reflecting our own opinion of the matter and incorporate them herein:

"The plaintiff, a resident of the Parish of Caddo, sues in this court the defendant, a corporation incorporated under the laws of the State of New York and there domiciled. The suit is to recover what is claimed to be the balance due on the sale of scrap iron from plaintiff to defendant, and for damages growing out of said failure to pay the balance. In other words, the suit is one strictly in personam.

"The plea to the jurisdiction is submitted on an agreed statement of facts, which statement shows that the defendant is domiciled in the State of New York; is not licensed to do business in the State of Louisiana; has not appointed an agent or agents for service of process in the State of Louisiana, and has no agents for any purpose who are residents of the State of Louisiana, and maintains no office or place of business of any kind in this state; that

defendant is engaged in the business of buying and selling scrap iron and steel; that its officers and agents come to the State of Louisiana and purchase scrap iron and steel in this state; that this scrap iron and steel is shipped either to Lake Charles or New Orleans, where it is inspected and unloaded, and that after being inspected by the representatives of the defendant, the accepted scrap iron and steel is loaded and shipped to other parts of the world, usually to the Kingdom of Japan or to other states of the Union. That defendant has been engaged in this method of procedure for several years with reference to its Louisiana business, and that said agents of defendant come into Louisiana only casually and intermittently and for the limited purpose of purchasing and shipping scrap iron and steel out of the state.

'█ It is contended by counsel for plaintiff that the defendant has waived any plea to the jurisdiction by filing in the alternative an objection to the citation, but all reference to the citation in this case is merely for the purpose of showing that the court had no jurisdiction, and such is not, in its proper sense, an exception to the citation and does not serve as a waiver of the plea to the jurisdiction.

"Inasmuch as there is no allegation and no proof one way or the other that the defendant was at the time the present suit was brought doing any business in the State of Louisiana, it might be said that the case of Gouner v. Missouri Valley Bridge & Iron Company, 123 La. 964, 49 So. 657, is applicable to the present case, but as neither side has presented the exception along that line, we prefer to decide it along the lines upon which it is presented.

"Now, taking up the cases cited by counsel for plaintiff, the first is that of Harnischfeger Sale Corporation v. Sternberg Company, Inc., 179 La. 317, 154 So. 10, in which the court held that a foreign corporation was doing business in the state of Louisiana. That was a case of one contract alone, but the court held that inasmuch as the one contract involved the letting of various other contracts and the work lasting over a long and continuous period of time it was sufficient to constitute the doing of business in the state.

"The case of Meade Fibre Company v. Varn (C.C.A.) 3 F.(2d) 520, was a case of a long continuous series of purchases and adjustments in the state, and for that reason the court held the foreign corporation to be doing business in the state.

"The case of Winslow Lumber Company v. Hines Lumber Company, 125 Or. 63, 266 P. 248, a foreign corporation was held to be doing business in the state for the reason that a substantial part of its entire business consisted of buying and selling lumber in that particular state.

'█ The best expression that we have been able to find as to what constitutes the doing of business in a state is to be found in Corpus Juris 14A, p. 1372 et seq., from which we quote in extenso:

"'The determination of the question whether a foreign corporation is doing business within a state so as to be subject to suit therein is often a matter of difficulty and of extreme nicety. In determining the question the courts have enunciated certain general principles and have stated generally that the foreign corporation must have entered the domestic state for the purpose of carrying on its business there, and that the transaction of business must be such that the corporation is for the time being within the state in which it is sued. But no all embracing rule as to what is "doing business" has been laid down. The question is one of fact, and it is to be determined largely according to the facts of each individual case rather than by the application of fixed, definite and precise rules. The question whether a foreign corporation is doing business in the state in such a sense as to make it amenable to the jurisdiction of the courts thereof is not one of local law or of statutory construction; it is one of jurisdiction, of general law, of private international law, and in the last analysis is one of due process of law under the constitution of the United States. It is not to be determined by the tests applicable under statutes such as those prescribing the conditions under which a foreign corporation may be allowed to do business within the state; activities insufficient to make out the transaction of business under such statutes may yet be sufficient to bring the corporation within the state so as to make it amenable to process. Neither are the tests employed to determine whether certain business is interstate or intra-state commerce applicable or controlling; the corporation may be doing business within the state so as to render it subject to the jurisdiction thereof, even though the business done is interstate rather than local. Indeed, where a state has enacted two

statutes relating to suits against foreign corporations, the effect of one of which is to make foreign corporations transacting local business in the state domestic corporations as to such business and subject to the same remedies in the courts of the state, the other statute will be construed to be limited in its application to foreign corporations transacting interstate commerce business in the state.

" 'It is stated generally that to render a foreign corporation subject to the jurisdiction of a state, the business done by the company in the state must be of such a character and extent as to warrant the inference that the company has subjected itself to the jurisdiction and laws of the state. There is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable the court to say that the corporation is present in the state. The business which a foreign corporation is conducting in the state, in order to give the courts of the state jurisdiction over it by proper service of process, must be a part of the business for which it was organized. Some courts take the view that it is essential that the foreign corporation transact a substantial part of its ordinary business in the state. Other courts, while recognizing that the transaction of a substantial portion of the business of the corporation by authorized agents in the state is sufficient to render the corporation subject to the jurisdiction of the courts of the state, hold that it is not necessary that the transactions in the state of the foreign corporation shall be the performance of those particular acts which constitute the characteristic feature of the business for which it was organized, or that the chief or principal part of the business of the corporation shall be transacted in the state. A continuous course of business, as distinguished from a single transaction, conducted by authorized agents within the state, constitutes a doing of business so that the corporation may be fairly said to be present in the state and amenable to the process of the courts. While absolute continuity is not required, the business done must be continuous in such a sense as to be distinguishable from mere, casual, isolated, or sporadic transactions, such as occasional purchases or sales. A single isolated act or transaction does not constitute a doing of business within the state. However, in a few jurisdictions it is held that intermittent business or even a single act or transaction may be sufficient to render the corporation subject to the jurisdiction of the courts as to the business actually done in the state.'

" The agreed statement of facts not showing the extent and the continuity of the defendant's business in the State of Louisiana any further than the statement that the agents came into Louisiana only casually and intermittently, it follows that the rule set forth above is applicable to the present case, and where the business done is only a single piece of business or consisted only of casual or sporadic transactions such is not sufficient to constitute the doing of business in this state to such an extent that it justifies a personal action against the foreign corporation.

"For the foregoing reasons, the plea to the jurisdiction is sustained."

 We also approve and adopt the reasons given by the court for denying the application for rehearing:

"The burden of the plaintiff's appeal is to be found in the motion for a new trial, but unless the facts set forth therein, together with the facts set forth in the agreed statement, would change the opinion of this court on the question of the jurisdiction of this court, then no good purpose could be served by granting a new trial in order to show those facts, even granting that the other propositions set forth in the motion are good.

"We are free to admit that the question presented is one not free of doubt. We realize that it would be perfectly legal for a state to pass a statute vesting jurisdiction in the courts of that state for a cause of action growing out of even one transaction on the part of a foreign corporation, but we have no such statute, and in the absence of such the question rests upon the general law alone.

" There is respectable authority to the effect that the foreign corporation must do a substantial part of its business in the state in order to constitute such the 'doing of business' in that state. There is some authority holding to the very opposite view that even one single transaction of small magnitude will vest jurisdiction; some, like Louisiana, that one large piece of business involving a long period of time and other sub-transactions, will invest jurisdiction. In our opinion, the more equitable, logical and sensible point of view is to the effect that when the busi-

ness done, although it might constitute more than one transaction, is sporadic or intermittent in character, such does not constitute a doing of business.

"There are many local corporations making their yearly purchases in the trade centers of the East; they send their agents to those places. To hold that such is the doing of business in those places and vest jurisdiction in the courts of those states would not only be a dangerous holding, but would eventually ruin the business of those states. There are decisions holding that such does vest jurisdiction, but we cannot agree with such holding.

'█ We realize that the appellate court of this state may join what we consider the minority on this question; but in our opinion, considering all the facts set forth in the agreed statement, together with the alleged facts set forth in the motion for a new trial, this court does not have jurisdiction of this case, an action in personam.

"For the foregoing reasons, the motion for a new trial is overruled."

We think the lower court's reasons are, in principle, supported by Robert W. Green v. Chicago, B. & Q. Railway Co., 205 U. S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and Peoples' Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537.

The latter of these cases arose in Louisiana and largely turned upon application of the jurisprudence and statute law prevailing therein to the facts of the case. The syllabus, which accurately discloses what the court decided, reads:

"Service of process cannot be made upon the agent designated by a foreign corporation for that purpose after he has ceased to be in its employment and his authority to receive service has been revoked by an instrument of revocation filed in the office of the secretary of state.

"In order to subject a foreign corporation to service of process within a state, the business done by it therein must be of such a nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is, by its duly authorized officers or agents, present within the state or district where service is attempted.

"Neither the advertisement by a foreign corporation of its wares in a state, nor the solicitation of orders there through agents having no authority beyond solicitation, nor its ownership of stock in corporations carrying on business in the state, amounts to that doing of business therein which will subject it to the local jurisdiction for the purpose of service of process upon it."

What does not constitute "doing business" in this state was recently given careful attention by this court in Norm Advertising, Inc., v. C. E. Parker, 172 So. 586, not yet published [in State reports]. In that case the right of plaintiff to bring and prosecute suit to recover an amount due it on an advertising contract with defendant, sought and procured within the state, was challenged. Act No. 8 of the Third Extraordinary Session of 1935 was relied upon by defendant. That act bars any foreign corporation from presenting any judicial demand in any court of the state unless and until it has complied with the laws of the state for doing business therein. The testimony disclosed that through its several agents many contracts had been procured by plaintiff in the state, which were ineffective until acceptance by plaintiff at its home office. We held that the facts did not support the contention that plaintiff had been doing business in the state in violation of its statute requirements as to appointment of an agent for service of process and gave judgment for plaintiff.

█ We do not agree with counsel in the contention that it is a legal conclusion to say that defendant's agents came into the state "casually and intermittently" to make purchases. This is simply the affirmative declaration of an ultimate fact deduced from knowledge of the existence of primary facts. A person may visit a state or country often and so regularly that it becomes a habit with him, and we would say that he habitually visits, etc., but we could not accurately refer to him as a "casual" or "intermittent" visitor. On the other hand, if his visits are occasional, periodical, without a fixed or near fixed schedule, he could accurately be denominated a "casual" or "intermittent" visitor. It is fair to assume in the present case that defendant's agents only entered the state when there was an accumulation of scrap iron and steel for sale. This presupposes prior notice or information from its patrons that large quantities of such materials were ready for shipment and sale. Certainly such visits were casual, in that they were made

without design or in keeping with a fixed schedule, and intermittent because made at intervals, periodic, alternating, etc. The motion for rehearing definitely avers that defendant's agents did not conduct a continuous business in the state nor make daily purchases therein, but "canvasses the trade intermittently every year." These averments do not enlarge upon the scope of the admissions contained in the statement of facts nor do they disclose facts not reasonably encompassed therein, and, as held by the lower court, we are unable to perceive wherein the situation would have been altered by granting the rehearing and admitting testimony admissible under application therefor.

 Plaintiff argues that the plea to the jurisdiction was waived by the alternative exception to the legality and efficacy of the citation served on the secretary of state. We are sure this contention is without merit. The fact that the plea to the jurisdiction was insisted upon, tried, and passed upon without any trial or consideration of the alternative plea, fully preserved exceptor's rights under the plea to the jurisdiction. Iddle v. Hamler Boiler & Tank Company, 132 La. 476, 61 So. 532, relied upon by appellant, does not conflict with this rule; nor does the later case of Martel Syndicate v. Block et al., 154 La. 869, 98 So. 400. Trial of the plea to the jurisdiction was not embarrassed or encumbered with any fact alleged or issue raised by the alternative plea. The general, if not invariable rule, is that the benefits of a special plea or exception are waived unless action by the court thereon in limine is insisted upon. This is well established in our jurisprudence. This course was followed by appellee. In this connection appellee made the point—which we think well taken—that under the plain terms of Act No. 124 of 1936, amending article 333 of the Code of Practice, all dilatory pleas must be filed at one and the same time. A plea to the jurisdiction is a declinatory exception (Mann v. Mann, 170 La. 958, 129 So. 543), a species of the dilatory exception, and subject to the rules governing that class of exceptions. Article 331 of the Code of Practice reads:

"There are two principal species of exceptions; some are dilatory, others peremptory.

"Dilatory exceptions are divided into declinatory and those simply called dilatory exceptions."

Exceptor makes the point that the petition does not definitely allege that at the time of filing of suit defendant was then engaged in or doing business in the state. In support of this contention, Gouner v. Missouri Valley Bridge & Iron Company, 123 La. 964, 49 So. 657, is cited. The lower court did not dispose of the exception on this contention, but based its decision upon the primary and broader ground developed by the plea and urged by the exceptor. We also follow this course.

We are of the opinion the judgment of the lower court is correct, and it is affirmed, with costs.